## PEOPLE *v.* PRATT.

1. CRIMINAL LAW — WITNESSES — GRAND JURY — COMMUNICATIONS TO JUDGE — DISCLOSURE — PRIVILEGE.

Respondent, having been subpœnaed by the grand jury, informed the prosecuting attorney that he would like to talk with some one in whom he had confidence before testifying, and asked if he could not see the judge who had impaneled such jury. The prosecutor took him to the judge's room, to whom respondent stated that he wanted advice. The judge said that he could not give him any advice, and suggested that he see an attorney; but respondent objected that he was not acquainted with any attorneys who were accessible. The judge thereupon told him that he could not advise him for his personal benefit, but would say that, while he was not obliged to testify to anything before the grand jury to incriminate himself, if he did testify, he should tell the truth, whatever it was; whereupon respondent, after a little delay, made a confession to the judge. *Held*, that such confession was a confidential communication, within the principle applicable to the relation of attorney and client, and was inadmissible against respondent.

2. SAME.

Such communication, having been made to the judge in control of the grand jury, before whom respondent had been called as a witness, and might by such judge be compelled to testify, was likewise privileged, within the rule governing testimony before such jury.

GRANT, J., and HOOKER, C. J., dissenting.

Exceptions before judgment from Ingham; Wiest, J. Submitted November 20, 1902. (Docket No. 219.) Decided May 12, 1903.

Charles H. Pratt was convicted of bribery. Reversed.

*Alex. J. Groesbeck, Q. A. Smith,* and *O. J. Hood,* for appellant.

*Horace M. Oren,* Attorney General, and *Arthur J. Tuttle,* Prosecuting Attorney, (*Watts S. Humphrey,* of counsel), for the people.

CARPENTER, J. Defendant was convicted under an indictment in which he was charged with unlawfully and corruptly promising the sum of $20,000 to a member of the house of representatives of the State of Michigan, with intent to influence the act, vote, decision, and judgment of said member, in his legislative capacity, on a certain joint resolution then and there pending in the house of representatives, and with unlawfully and corruptly giving said sum to said member with said intent to influence his action on said resolution. Defendant assigns 116 errors. We deem it necessary, however, to discuss but one of these assignments. That relates to the admission of the testimony of Hon. Rollin H. Person, the judge of the Ingham county circuit court at the time the defendant was indicted. Defendant was subpœnaed as a witness before the grand jury. Arthur J. Tuttle, the prosecuting attorney of said county, testified:

"Mr. Pratt said to me: 'I would like to talk to some attorney before I go before the grand jury. I have been up to see Judge Cahill, and for some reason he could not talk to me about it. * * * I would like to see some one that I have confidence in, before I go before the grand jury and give my testimony. Where is Judge Person? Couldn't I see him and talk to him?' I took him to Judge Person's room, and introduced him to Judge Person, and they were together for some time, and Mr. Pratt then went back before the grand jury."

Before Judge Person testified, he said:

"While it is immaterial to me personally, I think I ought to raise the question whether I should state matters that came to me in that way, when I was on the bench; that is, whether it is against public policy for me to be required to state them. * * * Mr. Pratt said that he was before the grand jury, and wanted to get some advice. I said, 'Mr. Pratt, I cannot give you any advice.' He stood a moment, irresolute, and I said, 'I will say this to you,—that you are not obliged to say anything before the grand jury to criminate yourself.' He said he knew that, but he wanted advice as to what course he ought to pursue for his benefit. I said, 'Mr. Pratt, you had better see an attorney.' He said: 'I have seen an attorney here, but got no advice from him. I am not acquainted with the attorneys here, and I don't know how much they may be employed in these matters by various parties against my interest,—where they would conflict our interests.' 'Well,' I said, 'I cannot give you any advice as to what you ought to do for your personal benefit, but you are not obliged to testify to anything that will incriminate yourself; but, if you do testify, I will say this much to you: Tell the truth, whatever it is.' He stood for a moment, and burst into tears, like a baby, and said, 'That is the last thing my wife said to me before I left home,—was to tell the truth, whatever I told;' and he dropped into a chair and cried; and in a moment he straightened up and he said: 'I must tell. I won't stand this any longer.' And he went right on rapidly and told his story."

At this point, defendant's counsel objected to Judge Person's testimony on the ground that the communication in question was confidential, and its disclosure forbidden on grounds of public policy. The trial court ruled that there was nothing exempting Judge Person from testifying (to which ruling defendant excepted), and he proceeded and detailed the statement made to him by defendant. The testimony detailing this statement occupies about 3½ pages of the printed record. It may be described briefly as follows: Defendant, with the co-operation of a certain prominent State official, planned to corruptly secure the adoption of a certain joint resolution. To carry

out this plan, defendant delivered drafts to the amount of $20,000 to a prominent member of the house of representatives.

It is to be noted that the purpose of the defendant (though this does not appear to have been known to Judge Person) was "to talk with some one he had confidence in." It is obvious, too, that this confidence was given by reason of Judge Person's professional and official position, and of the advice given by him to defendant. Is the communication made under these circumstances to be regarded as confidential, and its disclosure forbidden by principles of public policy? Counsel for the people has neither in his argument nor brief endeavored to sustain the ruling of the court below. He has taken a course which merits the highest commendation. Apparently doubtful of the propriety of the ruling permitting this disclosure, he has not endeavored to support it by inapplicable argument or authority. He has contented himself with saying:

"This matter received the careful attention of counsel in the court below. The court admitted the testimony. It is for this court to say whether or not that decision was correct. If it was correct, there is no error in this case. If incorrect, the conviction should be set aside and defendant discharged, for without this testimony another conviction cannot be obtained."

It seems to us that the principle which prohibits the disclosure of communications between attorney and client prohibits the disclosure under consideration. That principle is found in the common law, and is not confined in its application to cases where the technical relation of attorney and client exists. In the case of *People* v. *Barker*, 60 Mich., at page 297 (27 N. W. 546, 1 Am. St. Rep. 501), this court, speaking through Mr. Justice CHAMPLIN, said:

"Confidential communications made in reliance upon the supposed relation of attorney and client, whether the party assuming to act as such is an attorney or not, are excluded upon the plainest principles of justice."

The principle extends to communications made under the erroneous belief that the party consulted had consented to act as counsel. *Smith* v. *Fell*, 2 Curt. Ecc. 667. The privilege is not confined to communications made for the purpose of obtaining advice. It extends to "communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other." *Williams* v. *Fitch*, 18 N. Y., at page 551. It is not material that no fee has yet been paid or is to be paid. *Sargent* v. *Inhabitants of Hampden*, 38 Me. 581; *Wade* v. *Ridley*, 87 Me. 368 (32 Atl. 975); *Davis* v. *Morgan*, 19 Mont. 141 (47 Pac. 793).

Have these principles any application to the question under consideration? Defendant informed Judge Person that he wished advice as to what course he should pursue for his benefit. When advised by Judge Person to see an attorney, he made known the circumstances which prevented his acting in accordance with this advice. Thereupon Judge Person said:

"I cannot give you any advice as to what you ought to do for your personal benefit, but you are not obliged to testify to anything that will incriminate yourself; but, if you do testify, I will say this much to you: Tell the truth, whatever it is."

This statement of Judge Person was obviously advice, and it was advice which properly should, and in this case did, come from a lawyer to a layman who desired to be advised. It is immaterial that the advice is so simple that an intelligent layman could have given it. This would perhaps characterize the best legal advice that ever was given, but it would be legal advice none the less. If it were true that the course of action prescribed by this advice was the only proper course to pursue, a relation of confidence nevertheless resulted from its being given. But it is not true that the course of action prescribed by this advice is the only course an honest lawyer might have

133 Mich.— 9.

advised defendant to follow. It is quite conceivable that a lawyer having regard to the personal interests of defendant, acting from the highest motives, might have said: "Testify to nothing that is not true, but, if you are asked to testify to anything that may incriminate you, I advise you to decline to answer, upon that ground." It is clear that defendant then and there decided to adopt and act upon the advice which Judge Person had given him, and, as a result, gave his confidence, and made the communication under consideration.

If Judge Person had not been, as he was, the judge of the circuit court for the county of Ingham, who had convened the grand jury, the principles of law above referred to would have prevented his disclosing the communication respondent made to him. It is true that Judge Person's position as judge of the circuit court prevented his becoming, in law, respondent's attorney. But it did not, in fact, prevent his advising respondent what course to pursue. How is the principle which regards as confidential communications between attorney and client affected by the fact that the attorney in this case was also a judge ? If it be true that the fact that the attorney was the judge prevented his legally acting as attorney, it is also true that the fact that he occupied that position gave an increased weight to his advice. The reasons for regarding as confidential communications made in consequence of advice from an ordinary attorney apply with full force, and are re-enforced by others, when that advice emanates from an attorney who is also a judge. The law protects these communications as confidential, because of the nature of the confidence which exists between the client and the attorney of his choice. That confidence is not diminished, but is increased, when the advice is given by the judge, authorized not merely to express an opinion, but to declare the law. Not often will a judge undertake to give legal advice. Circumstances may, however, as in this case, make it his duty to give it. When they do, he will not, in any technical sense, become the attorney of the person

to whom it was given. But if, as a result of such advice, he receives the confidence of that person, the principles of public policy applicable to attorney and client require that confidence to be respected.

I think our decision in this case might be based on another ground, viz., the communication under consideration is privileged because made to the judge in control of the deliberations of the grand jury, before whom defendant had been· called as a witness. Defendant, wishing advice as to what testimony he should give before the grand jury, and having no opportunity to consult a lawyer of his own choice, went directly to Judge Person, who had the power to compel him to testify. See *People* v. *Forbes*, 143 N. Y. 219 (38 N. E. 303); *Minters* v. *People*, 139 Ill., at page 365 (29 N. E. 45). If defendant had gone before the grand jury, and had refused to answer questions put to him, his right to persist in such refusal would have been determined by Judge Person. See above cases. It is obvious that whatever Judge Person· thus learned—and in that event he would have learned what testimony defendant had given—would have been privileged. If in that manner Judge Person had learned all that he did by the communication under consideration, the entire disclosure would have been privileged. Is it to be said that, because defendant anticipated his dilemma, and obtained this advice shortly before it was necessary to act upon it, he thereby loses the privilege which he would otherwise have had? I do not think so. I think we should look upon Judge Person as the judge in charge of the grand jury, the advice given by him as advice respecting testimony to be given before said grand jury, and that we should therefore decide that the communication made in consequence thereof is privileged, in accordance with the principle that governs testimony before said grand jury.

It follows from this reasoning that there was error in receiving the testimony of Judge Person; and inasmuch as, according to the statement of counsel, and according

to our own judgment of the record, there can be no conviction without this testimony, the conviction will not only be set aside, but the defendant will be discharged from custody.

MOORE and MONTGOMERY, JJ., concurred with CARPENTER, J.

GRANT, J. (*dissenting*). A grand jury had been summoned by the circuit court of Ingham county, Judge Person presiding. One of the subjects under investigation by the grand jury was an attempt to bribe legistators to secure the passage of a certain bill then pending before the legislature. The respondent was the agent of and represented a corporation in the attempt to secure the passage of this bill. Undoubtedly the respondent believed that he was summoned as a witness before the grand jury to testify in regard to this transaction. Before going before the grand jury he went to the presiding judge, and made a voluntary confession of his crime. He knew that the presiding judge could not act as his attorney or counsel, any more than could the prosecuting attorney. To hold that he believed that the judge could so act would be a reflection upon the respondent's common sense and intelligence. He was a man of age and experience, and the trusted agent of a large corporation. I do not think that it can be said, under this record, that he approached the presiding judge and made his confession with any idea that he stood to him in that confession in the relation of client and attorney. The confession was made not only without any threats or promises, or even inducements, but after the presiding judge had told him that he could not advise him; thus practically saying to him: "You know that the relation between us is not that of client and attorney, and cannot be, and that whatever you say to me is not privileged, under the law." Every one knows that a presiding judge cannot advise litigants, for it would disqualify him from sitting in the case. It is immaterial what the motive of respondent was in making this confes-

sion,—whether he did it from sting of conscience, or from repentance for his error, or a desire to escape sentence, or in order to obtain a lighter one. The confession was not made as an informer, for the purpose of causing an investigation into the crime of others. It was no less a confession, pure and simple, because it involved other participants in the crime. As against such participants, the confession would not be competent evidence, at least until a conspiracy had been established by other evidence. Confessions are potent evidence of guilt when made voluntarily, without threats, promises, or duress. See *Daniels* v. *State*, 6 Am. St. Rep. (78 Ga. 98) 238, and note.

It will be conceded that there is no statute of this State covering the case. The only statutory privileged communications are where a confession is made to a priest "in the course of discipline enjoined by the rules or practice of such denomination" to which such priest belongs (3 Comp. Laws, § 10180), and information acquired by a physician in attending a patient in his professional character, which information must be necessary to enable him to prescribe (3 Comp. Laws, § 10181). Under these statutes, confessions of crime made to a physician, not necessary for the physician's prescription, or to a priest, not in accordance with the discipline of his church, would be competent. At the common law, communications to clergymen and physicians were not privileged. 1 Greenl. Ev. (16th Ed.) § 247*a*. The question of communications by a layman to his priest arose in the English courts, and the court said:

"It is not to be supposed for a single moment that a clergyman had any right to withhold information from a court of law. It is a principle of our jurisprudence that justice should prevail, and no unrecognized privilege can be allowed to stand in the way of it." *Normanshaw* v. *Normanshaw*, 69 L. T. Rep. (N. S.) 468.

The common law throws the mantle of secrecy over two classes of communications, viz., between lawyer and client, and between government officials and informers. What is the basis of this rule of the common law? Such com-

munications are not excluded for the protection of criminals, but solely on the ground of public policy. Many efforts have been made before the courts to ascertain who informed government officials of frauds and crimes against the government, but the testimony has been universally excluded, not for the purpose of protecting the informer against prosecutions, but solely because public policy requires that this information, so essential to protect the government from frauds and crimes, should not be made public; otherwise the government would suffer, for it is evident that but few, if any, would give such information if they knew that it could be made the basis of a libel suit, or could be used against them in other ways. See *Worthington* v. *Scribner*, 109 Mass. 487 (12 Am. Rep. 736); *Rex* v. *Akers*, 6 Esp. 125; *Attorney General* v. *Briant*, 15 Mees. & W. 169; *Robinson* v. *May*, 2 Smith, J. P. Eng. 3; *Beatson* v. *Skene*, 5 Hurl. & N. 838. In *Shinglemeyer* v. *Wright*, 124 Mich. 230 (82 N. W. 887, 50 L. R. A. 129), we said:

"The defendant did not make these statements for repetition. He made them for the exclusive use and benefit of the trusted and sworn officers of the law. They should have been forever locked in their breasts, and never disclosed; otherwise, few persons would dare to disclose to an officer the name of a suspect, or anything they had learned about his character."

This rule also covers communications made to those in authority, relative to the character and conduct of a party applying for a public office. *Earl* v. *Vass*, 8 Scotch App. Cas. 229; *Garn* v. *Lockard*, 108 Mich. 196 (65 N. W. 764); *Pollasky* v. *Minchener*, 81 Mich. 280 (46 N. W. 5, 9 L. R. A. 102, 21 Am. St. Rep. 516); *Bacon* v. *Railroad Co.*, 66 Mich. 166 (33 N. W. 181); *Wieman* v. *Mabee*, 45 Mich. 484 (8 N. W. 71, 40 Am. Rep. 477).

This case is not within the principle of those above cited. Evidence of these communications is rejected "upon the ground of public policy, because greater mischiefs would probably result from requiring or permitting its admission

than from any refusal to receive it." 23 Am. & Eng. Enc. Law (2d Ed.), 50.

The rejection of this testimony is sought upon the basis of the existence of the relation of attorney and client. The authorities hold that "it is absolutely essential, in order to make the communication privileged, that the relation of attorney and client should have existed," and that "the communication must be made solely on account of the relation of attorney and client, and for the purpose of obtaining professional assistance or advice," etc. 23 Am. & Eng. Enc. Law (2d Ed.), 58, 62, and authorities there cited: *Bramwell* v. *Lucas*, 4 Dowl. & R. 367. If that relation existed, the evidence is inadmissible; otherwise it is admissible. There is no privilege for a confidential communication, merely as such. 1 Greenl. Ev. (16th Ed.) § 248. It is not a question of sentiment, but of law. The language of Lord Camden, quoted in Greenleaf on Evidence, is appropriate here:

"It is not befitting the dignity of this high court of justice to be debating the etiquette of honor at the same time when we are trying lives and liberties." 1 Greenl. Ev. § 248.

There must be found some well-recognized rule of the common law, founded upon common sense and justice, which justifies the exclusion of a voluntary confession of crime. Public policy protects communications between lawyer and client from the eyes of the public, because they are regarded as essential to enable the lawyer to make a proper defense for him. It does not protect confessions or communications where that relation does not exist, no matter how close any other relation between the parties to it may be, or what the purpose may be in making the confession. No sacredness attaches to the confession of a criminal, and, when he seeks protection from its consequences, he must show his privilege to be within some well-recognized rule of law. I do not believe in extending the rule for his protection, but, rather, in restricting it for the protection of the public. Chief Justice Shaw said that the

communication, to be privileged, must be "with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties, and obligations, whether with a view to the prosecution or defense of a suit, or other lawful object. *   *   *

"This principle we take to be this : That so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be forever sealed. To the rule as thus stated we are still inclined to adhere.

"But the privilege of exemption from testifying to facts actually known to the witness is in contravention to the general rules of law. It is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy upon which it is allowed. *It is extended to no other person than an advocate or legal adviser, and those persons whose intervention is strictly necessary to enable the client and attorney to communicate with each other, as an interpreter, agent, or attorney's clerk. And this privilege is confined to counsel, solicitors, and attorneys, when applied to as such, and when acting in that capacity.* Wilson v. Rastall, 4 T. R. 753. *   *   * And so strictly is the rule held that the privilege extends only to communications made by the client to his attorney for the purpose of obtaining legal advice, that in a late case it was held that a communication made by a client to his attorney, not for the purpose of asking his legal advice, but to obtain information as to a matter of fact, is not privileged, and may be disclosed by the attorney if called as a witness in a cause. Bramwell v. Lucas, 2 Barn. & Cress. 745." Hatton v. Robinson, 14 Pick. 416 (25 Am. Dec. 415).

As applied to this case, the relation of client and attor-

ney is the only basis upon which the confession can be held privileged.    How can this relation be held to exist in the face of the fact that the respondent knew he was not talking to Judge Person as his lawyer? and most certainly did he know this, when the judge promptly told him that he could not advise him.    Not only did the judge plainly tell him this once, but also told him he had better see an attorney; and after respondent said he had seen an attorney, but got no advice from him, etc., the judge again said, emphatically, "I cannot give you any advice as to what you ought to do for your personal benefit;" and after all this the respondent told his story of the crime.    I cannot yield my assent to the existence of a relation between this respondent and Judge Person which neither, in my judgment, believed to exist.

I have carefully examined the authorities to find under what circumstances judges are privileged from testifying as to matters which take place before them, and the only privilege I find accorded to them is that, on grounds of public policy, they cannot be called on to state what occurred before them in court.    1 Greenl. Ev. (16th Ed.) § 254c.    I find one case which is somewhat in point. *State* v. *Chambers*, 45 La. Ann. 36 (11 South. 944). That case, in its facts, is almost the counterpart of this, except that in that case the judge sought the respondent, while in this the respondent sought the judge.    The respondent was charged with the crime of murder.    The district judge, before whom he was first tried, visited the respondent in prison, and communicated with him.    Upon the second trial, presided over by the judge's successor, he (the judge) was placed upon the stand as a witness.    The objection was made, not that the communication was privileged, but that the presence of the judge in his official capacity in the prison intimidated the respondent, so that his answers were not free and voluntary.    The court, in disposing of the case, said:

"We find no legal and valid reason to set aside the ver-

dict on this account. His testimony shows that he warned and cautioned the defendant, and that he conversed freely and voluntarily."

What difference, in principle, does it make whether the judge sought the respondent to obtain, if he could, a confession, or whether the respondent sought the judge to voluntarily make a confession? The only difference between the two cases is that in this case the respondent made the communication after twice being told by the judge that he could give him no advice, while in the other case the respondent made the communication without asking any advice.

The fact that a grand jury was believed to be investigating this crime is of no significance. The same rule would apply if there had been no grand jury, and no suspicion of the crime or of the respondent's guilt. Suppose a case of murder or burglary, and the criminal, for any reason whatever, seeks the presiding judge within whose jurisdiction the crime was committed, and confesses the crime, after being told that he can give him no advice; is the judge's mouth sealed? Should it be sealed? Must a heinous crime go unpunished, under the protection of privileged communications, where no relation of lawyer and client existed or could exist? Would not the judge, under such circumstances, be required, by all considerations of public policy, to disclose the confession?

I do not think there is any error upon the record, and the conviction should be affirmed.

HOOKER, C. J., concurred with GRANT, J.