**STATE of Missouri, Plaintiff–Appellant,**

v.

**James T. LONGO,**
**Defendant–Respondent.**

No. 57518.

Missouri Court of Appeals,
Eastern District, Division One.

April 17, 1990.

Cynthia A. Rosebaugh, St. Louis, for plaintiff-appellant.

Joseph Howlett, Clayton, for defendant-respondent.

## PER CURIAM.

Appellant, State of Missouri, appeals from an order of the Circuit Court of St. Louis County sustaining respondent's, James Longo's, motion to disqualify a State's witness due to the attorney-client privilege.[1] We affirm in part and reverse in part.

Respondent was charged with violating RSMo § 566.080 (1986), deviate sexual assault in the second degree, a Class D felony and with violating RSMo § 566.090 (1986), sexual misconduct, a Class A misdemeanor on July 2, 1988. On September 1, 1988, the State endorsed C.C., a St. Louis County Assistant Prosecuting Attorney, as a witness against the respondent. Respondent filed a motion to disqualify the prosecuting attorney's office and a motion to disqualify C.C. as a witness. This latter motion was based upon an alleged attorney-client privilege between respondent and C.C.

A hearing was held on these motions on October 16, 1989. The evidence presented at the hearing revealed that respondent had been C.C.'s seventh grade teacher.

---

1. This is an interlocutory appeal pursuant to RSMo § 547.200.1(2) (1986) which provides:
"Appeal by State—1. An appeal may be taken by the State through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in: ...
(2) suppressing evidence;"

They were very close friends and, when she was fifteen, respondent took the role of her father after her natural father died. In 1986, C.C. passed the Missouri bar examination. She began working at the prosecuting attorney's office in July, 1987. Respondent was fully aware that C.C. was with the St. Louis County prosecuting attorney's office.

In early 1988, respondent asked C.C. to help run his election campaign for a seat on the University City School Board. C.C.'s responsibilities for the campaign included targeting likely school board voters, arranging coffees and handling campaign literature. Her position on the campaign was strictly voluntary.

In early March, 1988, R.H., a boy who respondent had counseled, approached respondent in his home, accused respondent of molesting him and demanded money. After R.H. left respondent's home, respondent called C.C. C.C. tried to calm the respondent and asked what the allegations were about. The respondent told C.C. that he had given R.H. "birthday spankings" but had not molested the boy. C.C. explained that she was an assistant prosecuting attorney and could not represent him. She then told him not to be alone with R H. and to obtain a tape of anything R.H. said. C.C. also recommended that someone always be with the respondent in his apartment in case R.H. tried to make contact. Both R.H.'s allegations and C.C.'s advice were explained to respondent's election campaign committee at their next meeting.

Soon afterwards, C.C. and respondent, in the presence of Patrick Wright, a member of respondent's campaign, went through respondent's apartment identifying things that might be incriminating. C.C. explained to respondent and Mr. Wright that they had to think "like prosecutors do" and not have anything in the apartment

concerning children. The incriminating items were later removed by Wright and respondent from the apartment.

On March 30, 1988, Alan Zvibleman, an attorney with Popkin and Stern, arranged a meeting with the respondent. At respondent's request, C.C. also attended. C.C. testified that respondent had asked others to attend but that they "couldn't make it." She further testified that it was her understanding that she was there "from the campaign, and just basically for moral support." Attorney Zvibleman informed respondent that he did not believe that anything respondent said to him in the presence of C.C. would be protected under the attorney-client privilege.

Attorney Zvibleman then began discussing with C.C. "hypothetically" what the prosecutor's office might do in the event there was a plea of guilty. After a call to the prosecuting attorney's office of St. Louis County, C.C. advised attorney Zvibleman that, under the circumstances, the hypothetical defendant would get probation. Mr. Zvibleman then conferred alone with the respondent. When C.C. was asked back into the office, respondent was visibly upset and stated "Alan [Zvibleman] said the tape is devastating. Do you think I should plead guilty?" C.C. asked if respondent had touched the boy's genitals to which respondent replied in the affirmative. C.C. then asked if he were gay to which he replied "I don't know, I am confused."

The trial court overruled the motion to disqualify the prosecuting attorney's office but sustained the motion to disqualify C.C. as a witness. The rationale behind the trial court's decision to disqualify C.C. as a witness was that the attorney-client privilege applied.[2] This appeal followed.

The attorney-client privilege dates back to the reign of Elizabeth I of England and

---

**2.** The trial court also found that, because C.C. acted as respondent's attorney while she worked as an assistant prosecuting attorney, C.C. was also disqualified due to conflict of interest principles. We need not discuss this issue as it has

not been presented by appellant in its points relied on nor argued in it's brief. Rule 84.04; *Thummel v. King,* 570 S.W.2d 679, 684–690 (Mo. banc 1978).

is, therefore, the oldest of the privileges for confidential communications.[3] *See* 8 *Wigmore,* Evidence § 2290 (McNaughton Rev.1961). In Missouri, this common law privilege has been codified. RSMo § 491.060 (1986). RSMo § 491.060 provides, in part:

> Persons incompetent to testify—Exceptions, children in certain cases.—The following persons shall be incompetent to testify: ...
>
> (3) An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client;

This section has been construed to be declaratory of the common law rule without limiting or diminishing the common law rule. *State ex rel. Great American Insurance Co. v. Smith,* 574 S.W.2d 379, 382 (Mo. banc 1978). In addition, the attorney-client privilege is to be construed broadly to encourage its fundamental policy of encouraging uninhibited communication between the client and his attorney. *Id.* at 383.

The attorney-client privilege attaches to: 1) Information transmitted by voluntary act of disclosure; 2) between a client and his lawyer; 3) in confidence; and 4) by a means which, so far as a client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted. *Id.* at 384. All four of the above elements must be present for the privilege to apply. In addition, surrounding circumstances should be considered as they indicate the existence, or nonexistence, of any one of the elements.

In the present case, this court is presented with three separate instances where statements were made by respondent to C.C. which respondent claims should be protected by the attorney-client privilege.

The first instance was the phone call from respondent to C.C. in which respondent discussed with C.C. the allegations made by the boy, R.H. The evidence at the hearing showed that respondent knew that C.C. was an assistant prosecuting attorney and that she informed respondent that she could not represent him. Had C.C. stopped there or merely recommended an attorney, no attorney-client relationship would have attached. She went on, however, to question respondent about the truth of the allegations and to advise him regarding a proper course of conduct. The creation of an attorney-client relationship is sufficiently established when the advice and assistance of attorney is sought and received in matters pertinent to her profession. *Erickson v. Civic Plaza Nat. Bank of Kansas City,* 422 S.W.2d 373, 378 (Mo.App., K.C.D.1967). While it is also true that the client must believe that the attorney he seeks advice from is capable of providing him with representation, the trial court in this case found that respondent "relied on C.C.'s advice and thought she was representing him." We do not find this conclusion to be an abuse of discretion.

The second instance occurred at his apartment when C.C. advised him to "think like a prosecutor" and pointed out several things that could be regarded as "incriminating." The evidence is undisputed that Patrick Wright was in the apartment throughout these discussions. The presence of a third party, not essential to the transmission of information or whose presence is not reasonably necessary for the protection of the client's interest, belies the necessary element of confidentiality and vitiates the attorney-client privilege. *Smith,* 574 S.W.2d at 384; *State v. Fingers,* 564 S.W.2d 579, 582 (Mo.App., Springfield D.1978). It was an abuse of discretion for the court to hold that this instance was privileged.

Finally, the third instance at issue is the communications that occurred at at-

---

**3.** The rationale behind the privilege has changed, however, from protecting the "oath and honor" of the attorney to encouraging free communication from a client to his attorney. *See* 8 *Wigmore* Evidence § 2290 (McNaughton Rev.1961).

torney Zvibleman's office. C.C. testified that she believed she was attending the meeting at Zvibleman's office for "moral support." She then, however, gave a great deal of advice to the respondent and attorney Zvibleman regarding the result of respondent pleading guilty. In addition, the belief of C.C. regarding her role in attending the meeting is irrelevant. It is the client's reasonable belief that an attorney is representing him that provides the basis for the privilege. *See McCormick* on Evidence § 88 (3rd Ed.1984). Nor is the fact that C.C. is an assistant prosecuting attorney and informed respondent she could not represent him dispositive of whether a relationship existed. In *People v. Pratt*, 133 Mich. 125, 94 N.W. 752 (1903), the Michigan Supreme Court held that, although a judge repeatedly advised a criminal defendant that he could not represent him, where the Judge gave the defendant legal advice and obtained a confession, the Judge could not testify. In the present case, C.C. went far beyond that conduct shown in *Pratt*. She advised the respondent on what to do regarding his own protection from R.H. and aided the respondent in deciding whether he should plead guilty. She should not be able to testify as to the respondent's confession given at attorney Zvibleman's office.[4]

Affirmed in part and reversed and remanded in part for an order consistent with this opinion.

---

4. The presence of Zvibleman, unlike the presence of Wright above, did not break the attorney/client privilege. To hold that it did break the privilege would be to hold that a client could not make statements in the presence of two attorneys, both of whom were representing him. This would certainly do damage to the purpose behind the attorney/client privilege and we will not do so here.