In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

MARCUS GREER, ) No. ED109340
 )
 Appellant, ) Appeal from the Circuit Court of
 ) Ste. Genevieve County
vs. ) 20SG-CC00028
 )
STATE OF MISSOURI, ) Honorable Wendy Wexler Horn
 )
 Respondent. ) Filed: October 26, 2021

 OPINION

 Following his convictions for multiple sex crimes involving three minor girls for which

he was sentenced to a total of 128 years in prison, Appellant Marcus Greer filed his amended

Rule 29.15 motion in which he alleged that his trial counsel, of which there were three, were

ineffective (1) for violating the duty of confidentiality by discussing the State's plea offer with

his parents to enlist their assistance in convincing Greer to accept the offer, and (2) for failing to

object to allegedly improper remarks made by the prosecutor during closing argument.

 On October 26, 2020, the motion court issued its judgment which included findings of

fact and conclusions of law denying without an evidentiary hearing Greer’s post-conviction

motion. This appeal follows.

 We have reviewed Greer’s second point and find that the motion court did not err in

rejecting Greer's claim his counsel was ineffective for failing to object during the State's closing
argument. An extended opinion reciting the detailed facts and restating the principles of law

would have no precedential or jurisprudential value. Pursuant to Rule 84.16(b), we have

provided the parties with a memorandum, for their information only, setting forth the reasons for

our decision on Greer's Point II. However, Greer’s appeal of Point I requires our consideration

in this published opinion.

 Factual and Procedural Background

 In the underlying case and in the light most favorable to the jury verdict, the following

evidence was adduced: Sometime in April or May 2017, victim J.K., who was 12 years old at the

time, went to the home of her friends, victims D.G. and J.G., to play with a volleyball. D.G. and

J.G. are the biological daughters of Kate Cheshire with whom Greer lived. When J.K. arrived,

Greer told her that the girls were not home, so J.K. left. Later that day, Greer saw J.K. playing

outside alone and lured her to his home by convincing her to try on a tank top and shorts he

claimed he purchased for J.G. After changing into the clothes, Greer instructed J.K. to enter his

bedroom, bend over, and touch her toes. J.K. complied. Greer told her not to tell anyone about

the incident.

 A couple of weeks later, while J.K. was watching a movie with D.G. and J.G. in their

bedroom, Greer convinced J.K. to follow him into the bathroom where he instructed her to

expose her breasts which he then touched with his hands. Upon returning to the bedroom, J.K.

told D.G., who was 10 years old at the time, that “something weird” happened. Greer, who had

been listening from outside the door, later told D.G. not to tell anybody what had happened.

 A week or so later, while J.K. and D.G. were together in the yard, J.K. told D.G. what

Greer had done to her. D.G. responded that something similar had also happened to her. Later

 2
that day, they both told D.G.’s mother, Katie Cheshire. J.K. also told her own mother, who

contacted the Children’s Services division.

 D.G. told Cheshire that on more than 10 occasions Greer had come into her bedroom at

night and sexually assaulted her, which included Greer touching and penetrating D.G. with his

fingers and Greer making D.G. touch his private parts. These incidents generally happened

while Cheshire was at the gas station, at work, or at school. Greer instructed D.G. to not tell

anyone about what he was doing to her.

 Cheshire confronted Greer and recorded the conversation on her cell phone. Greer

initially denied the allegations. After Cheshire called the police, Greer told D.G. that he was

sorry, and implored Cheshire not to take any action. When the police arrived and approached

Greer, he said that he was the one they were there for and to put him in cuffs.

 A few days later, Cheshire found at her house a phone belonging to Greer. On it she

found images of her daughters D.G. and J.G. in their underwear, and photos depicting Greer’s

hands on J.G.’s private areas. After Cheshire reported what she found to the Division of Family

Services, a detective arrived and seized the phone.

 Greer was charged, tried by jury, and convicted in the Circuit Court of the Ste. Genevieve

County of three counts of the unclassified felony of statutory sodomy in the first degree in

violation of section 566.062,1 the class C felony of child molestation in the third degree in

violation of section 566.069, and four counts of the class D felony of possession of child

pornography in violation of section 573.037. The trial court sentenced Greer to consecutive

terms of imprisonment in the Missouri Department of Corrections of thirty years each on Counts

I, II, and III, ten years on Count IV, and seven years each on Counts V, VI, VII, and VIII, for a

1
 All statutory references are to the Revised Statutes of Missouri (2016).

 3
total of 128 years in prison. We affirmed his convictions and sentences in State v. Greer, 590

S.W.3d 437 (Mo. App. E.D. 2019) and issued our mandate on January 2, 2020.

 Standard of Review

 Appellate review of a judgment overruling a motion for post-conviction relief is limited

to a determination of whether the findings of fact and conclusions of law issued by the motion

court are “clearly erroneous.” Rule 29.15(k);2 see also Morrow v. State, 21 S.W.3d 819, 822

(Mo. banc 2000). The motion court’s findings and conclusions are presumptively correct and

will only be considered clearly erroneous if, after a full review of the record, the appellate court

is left with the definite and firm impression that a mistake was made. Id.; see also State v.

Johnson, 968 S.W.2d 686, 695 (Mo. banc 1998). Allegations contained in a motion for post-

conviction relief are not self-proving; instead, a movant bears the burden of proving his post-

conviction claims by a preponderance of the evidence. State v. Ervin, 423 S.W.3d 789, 793 (Mo.

App. E.D. 2013).

 In instances where ineffective-assistance-of-counsel claims for post-conviction relief are

the focus of our attention, we apply the Strickland test. See Strickland v. Washington, 466 U.S.

668, 687 (1984); Johnson, 406 S.W.3d at 898. To be entitled to relief, the movant must show by

a preponderance of the evidence that (1) his counsel failed to exercise the level of skill and

diligence that a reasonably competent counsel would in a similar situation, and (2) he was

prejudiced by that failure. Johnson, 406 S.W.3d at 898-99. To overcome the strong presumption

that counsel’s conduct was reasonable and effective, the movant must identify specific acts or

omissions of counsel that, in light of all the circumstances, fell outside the wide range of

professionally competent assistance. Id. To show prejudice, the movant must demonstrate that

2
 All rule references are to the Missouri Supreme Court Rules (2020).

 4
there is a reasonable probability that, but for counsel’s errors, the result of the proceeding would

have been different. Id. If a movant fails to establish either prong, the claim of ineffective

assistance must fail. Roberts v. State, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).

I. Counsel’s disclosure of the State's plea offer to Greer’s parents did not constitute

 the ineffective assistance of counsel because the information was not confidential

 and its disclosure did not prevent Greer from accepting the plea.

 In Point I on appeal, Greer argues that counsel was ineffective because he improperly

discussed the State’s plea offer with Greer's parents without first obtaining his permission to do

so. Greer contends this undermined his trust and confidence in his counsel and that but for

counsel’s conduct in this regard, he would have accepted the State’s plea offer which bore a

sentence of 20 years, instead of the 128 years he received at trial. We disagree because Greer's

assertion is refuted by the record, is illogical, and constitutes rank speculation.

 A criminal defendant has no constitutional right to a plea bargain or to a plea agreement.

Rowland v. State, 129 S.W.3d 507, 510 (Mo. App. S.D. 2004). So, failed plea negotiations do

not implicate the Constitution. Id. Rather, it is the ensuing plea of guilty arising from such

negotiations that is of constitutional significance. Id. And to show prejudice where a plea offer

has lapsed or been rejected because of counsel’s alleged deficient performance, a defendant must

demonstrate a reasonable probability he would have accepted the earlier plea offer had he been

afforded effective assistance of counsel. Missouri v. Frye, 566 U.S. 134, 147 (2012).

 Turning to the record here, we find that Greer has failed to demonstrate (1) that his

counsel was ineffective when he enlisted Greer's parents’ assistance in an effort to convince him

to take the plea offer, and (2) that he would have accepted the plea offer but for the contact with

his parents.

 5
 The State's November 15, 2017, plea offer was that Greer would be sentenced to 20 years

in prison in exchange for his guilty pleas to Count I and Count IV along with certain conditions

including (1) that he would waive his right to a Sentencing Assessment Report, and (2) that he

would plead guilty to Count II and receive a concurrent 5-year sentence. Also, the plea offer

carried a deadline that Greer plead guilty and be sentenced by December 19, 2017, and that

Greer give the State at least 7 days’ notice before entry of his guilty pleas so that the victims

could attend.

 Coincidentally, Greer’s case was set on the trial court’s December 19, 2017 docket

concerning a matter unrelated to the State's plea offer. On that date, Greer appeared with

counsel. The court announced its ruling on the State's motion in limine relating to the

admissibility of propensity evidence. The subject of the plea offer was not raised at that

appearance. Regardless, Greer had not given the State the 7 days' notice required by the plea

agreement. In fact, Greer demonstrated no intention on that date to even bring up the State’s

plea offer much less enter a guilty plea pursuant to that offer. In addition, Greer expressed no

complaint or any notion of a conflict with his counsel prior to or on that date.

 In its decision on Greer's post-conviction motion, the motion court placed considerable

weight on Greer's silence at the December 19, 2017 court appearance both as to the plea offer

and as to any complaints he may have had relating to counsel's contact with his parents. We

agree with the motion court's finding in this regard. The court found that there was “nothing in

the record that [Greer] had any intention of accepting the plea offer.” If Greer wanted to accept

the plea or if he was unhappy with counsel's conversation with his parents, he could have and

should have brought those matters to the court's attention on December 19, 2017.

 6
 We are likewise unpersuaded by Greer's complaint that his counsel violated his ethical

duty of confidentiality by involving Greer's parents in an effort to convince Greer to take the plea

offer. Not only do we fail to find any ethical violation, but Greer's assertion in this regard

appears to be an after-the-fact effort since he did not raise this issue until after the December 19th

deadline when the plea offer had already lapsed.

 Simply put, we do not believe the information counsel shared with Greer’s parents was

confidential attorney-client protected communications. The attorney-client privilege attaches to

information transmitted by a voluntary act of disclosure; between a client and his lawyer; in

confidence; and by a means which, so far as a client is aware, discloses the information to no

third parties other than those reasonably necessary for the transmission of the information or for

the accomplishment of the purpose for which it is to be transmitted. State v. Longo, 789 S.W.2d

812, 815 (Mo. App. E.D. 1990) (internal citations omitted). All four of the above elements must

be present for the privilege to apply. Id. In addition, surrounding circumstances should be

considered as they indicate the existence, or nonexistence, of any one of the elements. Id.

 The information that counsel discussed with Greer's parents was simply not attorney-

client privileged information. The State's plea offer was not confidential information since it was

manifestly known by the prosecuting attorney and likely others in that office.

 In White v. State 939 S.W.2d 887, 895 (Mo. banc 1997), the movant alleged that counsel

engaged in unethical and improper conversation with the victim’s immediate family members

concerning the merits of movant’s defense and movant’s trial strategy. Id. The content of these

conversations was conveyed to the State which White claimed resulted in his prejudice. Id. The

Supreme Court rejected White’s allegations as mere conclusions and speculation because he

failed to demonstrate how these arguably unethical disclosures resulted in prejudice at trial. Id.

 7
 Compared to the disclosures in White which were effectively to the opposing side of the

litigation, the disclosure at issue before us was merely to Greer’s parents and was for the purpose

of getting Greer to take the plea offer which he now illogically claims caused him to do the

opposite. So, if the prejudicial effect of the disclosure in White was speculative, the level of

speculation Greer proposes is even more so.

 Moreover, the record establishes that Greer was aware of and understood the terms of the

State’s plea offer, but he failed to indicate any intention to accept the deal until well after it had

expired. The record also shows that Greer had ample time to accept the November 15, 2017 plea

offer before the December 19, 2017 deadline. And Greer’s assertion after the deadline had

passed that he would have accepted it but for his counsel’s conversation with his parents is

completely refuted by the record. As in White, this Court will not offer relief for speculative

allegations made after the fact.

 Point I is denied.

 Conclusion

 Based on the foregoing, we affirm the judgment. A memorandum disposing of Point II,

which is not covered in this opinion, has been furnished to the parties pursuant to Rule 84.16(b).

 James M. Dowd, Judge

Michael E. Gardner, P.J., and
Lisa P. Page, J., concur.

 8