## KLABUNDE *v.* STANLEY

### Opinion of the Court

1. Discovery — Witnesses — Experts — Depositions — Denial — Discretion.

   Trial court did not abuse its discretion by denying defendant-doctors' motion, sought as a matter of right in a medical malpractice action, to depose plaintiff's expert witnesses because the request came too late and there was no showing made before the trial judge as to any special need for discovery deposition to be taken for plaintiff's experts.

2. Discovery—Pretrial Discovery—Litigation—Courts.

   Whatever rights any party may have to obtain pretrial discovery, such rights are always subject to the trial judge's right and duty to control the flow of litigation.

3. Discovery—Delay—Denial—Discretion.

   The fact that a medical malpractice lawsuit was five years old when the trial judge denied discovery satisfies the Supreme Court that there was not an abuse of discretion in its denial.

4. Discovery — Denial — Courts — Docket — Civil Litigation — Discretion.

   The principle that a judge is responsible for moving his docket is not a new one and discretion was always lodged in trial judges to deny discovery when that process interfered with expeditious disposition of civil litigation.

5. Witnesses—Experts—Relevant Facts—Opinion Testimony— Words and Phrases.

   An expert is not a person "having knowledge of relevant facts"

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 23 Am Jur 2d, Depositions and Discovery § 149.
[5, 9] 31 Am Jur 2d, Expert and Opinion Evidence § 1.
[6] 23 Am Jur 2d, Depositions and Discovery § 199.
[7–13] 23 Am Jur 2d, Depositions and Discovery §§ 195, 196.

within the meaning of the court rule providing for the scope of depositions in a pending action; but, by definition, an expert is one who gives opinion testimony, and not testimony concerning "relevant facts" (GCR 1963, 302.2).

6. WITNESSES — EXPERTS — OPINION — PROPERTY RIGHT — DIVULGING EXPERT OPINION — SUBPOENA.

An expert has a property right in his opinion and cannot be made to divulge it in answer to a subpoena (GCR 1963, 305.1).

CONCURRING OPINION

BLACK, J.

7. ATTORNEY AND CLIENT—WORK PRODUCT.

*A plaintiff is possessed of a substantively valuable right to keep inviolate the entire product of preparatory work done and to be done by her counsel, and defendants, their counsel, and this "one court of justice" as well, are possessed of no license or privilege to pry or nose into that product.*

8. DISCOVERY—ATTORNEY AND CLIENT—LAWYER'S WITNESS LIST—DISCRETION.

*No court rule, effective procedural statute, or decision of the Michigan Supreme Court holds that a motion for discovery of an opponent lawyer's ever-provisional witness list, lay or expert, is a proper invocation of judicial discretion and no decision of this Court says that such motions are grantable as a matter of right.*

9. WITNESSES—EXPERTS—RELEVANT FACTS—WORDS AND PHRASES—DEPOSITIONS.

*An expert is not a person "having knowledge of relevant facts" within the meaning of the court rule providing for the scope of depositions in a pending action (GCR 1963, 302.2).*

10. ATTORNEY AND CLIENT—WORK-PRODUCED INTENTIONS.

*No law compels an attorney, a conscientious preparationist for legal war, to disclose to his opponent or opponents any of his work-produced intentions, purposes, or plans; his intentions are his business.*

11. ATTORNEY AND CLIENT—WORK PRODUCT—PRIVACY.

*Thus far the Michigan Supreme Court has not sanctioned any violation of the privacy of any part of any work product trial lawyers construct for their clients.*

12. ATTORNEY AND CLIENT—WORK PRODUCT—PRIVILEGE.

*The work product of a trial lawyer is a concomitant of the relationship of attorney and client, and of the really broad privilege arising therefrom.*

13. ATTORNEY AND CLIENT—WORK PRODUCT—DISCRETION.

*There is no discretionary power to open the work product of a trial lawyer up for anyone, no matter what showing of "cause" the invoker of judicial discretion may exhibit or proffer.*

Appeal from Court of Appeals, Division 2, Quinn, P. J., and McGregor and V. J. Brennan, JJ., reversing Ingham, Sam Street Hughes, J. Submitted October 6, 1970. (No. 4 October Term 1970, Docket Nos. 52,441, 52,442.) Decided November 30, 1970. Opinions filed December 30, 1970. Rehearing denied December 30, 1970.

16 Mich App 490 reversed.

Declaration by Bettie L. Klabunde, for herself and as administratrix of the estate of Donovan E. Klabunde, deceased, against Arthur L. Stanley, M.D., C. J. Stringer, M.D., and the Ingham Medical Hospital for medical malpractice. Defendants sought discovery of certain of plaintiffs' expert witnesses and other items. Discovery denied. Defendants appealed to Court of Appeals. Reversed. Defendants appeal. Reversed and remanded for trial.

*John P. O'Brien* and *Raymond Joseph,* for plaintiff.

*Foster, Campbell, Lindemer & McGurrin* (by *John L. Collins*), for defendants Stanley and Stringer.

T. E. BRENNAN, C. J.

## THE CASE

Plaintiff commenced this action in March of 1962, seeking recovery of damages for alleged medical malpractice in treatment of her husband. In January of 1963, interrogatories were filed by defendants which requested plaintiff to:

"III. State the name and address of every member of the medical profession that you have consulted or had conferences with, or your attorneys have had conferences with or consulted with as proposed expert witnesses to testify on your behalf as to the alleged negligence or malpractice of Defendants.

"IV. List each medical treatise or article that you or your attorneys have used in connection with the preparation of the Declaration in this cause or upon which you rely as a basis for the alleged negligence or malpractice of Defendants.

"V. State whether you or your attorneys have any written reports received from so-called expert witnesses that you have consulted or intend to use at a trial of this cause and attach copies of said reports hereto."

Plaintiff's answer to the interrogatories was filed on August 2, 1963:

"3. I do not have sufficient knowledge to answer interritory [*sic*] III with reference to my attorneys, but as to myself, the answer is 'none';

"4. I do not have sufficient knowledge to answer interrogatory IV with reference to my attorneys, but as to myself, the answer is none;

"5. I do not have sufficient knowledge to answer interrogatory V with reference to my attorneys, but as to myself, the answer is I have 'none'."

At a pretrial conference held on February 27, 1964, defendants again requested the names and addresses of those experts who "will be relied upon to establish the grounds of negligence, malpractice and so forth set forth in the declaration." Plaintiff resisted the pretrial request; a motion to compel answer to interrogatories or to furnish identity of expert witnesses was filed on July 2, 1964, pursuant to GCR 1963, 313.1, 313.2 and 302.2(1), and a hearing was scheduled for November 27, 1964. The hearing on the motion was adjourned at the request of defendants and was never rescheduled. On March 7, 1967, defendants filed a motion for discovery supported by affidavit which prayed for the following:

"(1) For an order requiring Plaintiffs to divulge and disclose the names of all expert witnesses that they intend to call at trial.

"(2) For an order limiting Plaintiffs in their right to call expert witnesses to those names listed and disclosed pursuant to Order of this Court.

"(3) That this Court set the day of March 18, 1967 for the taking of the deposition of the expert witness or witnesses that Plaintiffs intend to call at the time of trial."

Plaintiff filed no answer to the motion but filed a post-hearing affidavit in opposition to the motion.

The trial court denied defendants' motion on July 3, 1967, reasoning that the applicable court rules granted discretion to grant or deny the motion, and rejecting defendants' contention that the motion should have been granted as a matter of right. An interlocutory appeal from the order denying discovery was taken; the Court of Appeals,[1] while affirming the trial court's right of discretion, held

---

[1] 16 Mich App 490 (1969).

that the order denying the requested discovery constituted an abuse of discretion. Pursuant to GCR 1963, 820.1(7), it entered an order requiring plaintiff to divulge the names and addresses of the proposed expert witnesses, restricting plaintiff to the use at trial of those experts divulged, and authorizing defendants to depose such experts at defendants' expense with respect to the qualifications and experience of the experts in the field of their testimony and whether such experts considered any facts not available to defendants in formulating their opinions.

## DISCUSSION

The issue presented is, very simply, whether the trial court abused its discretion by denying the defendants' motion to depose plaintiff's expert witnesses. We hold that the trial judge did not abuse his discretion for two reasons.

First, because the request came too late. Whatever rights any party may have to obtain the pretrial discovery, such rights are always subject to the trial judge's right and duty to control the flow of litigation. Standing alone, the fact that the lawsuit was then five years old when the trial judge denied discovery satisfies us that there was not an abuse of discretion in its denial. GCR 1963, 301.7[2] providing that discovery may not be had after the pretrial conference without special motion for good cause shown, was not in effect when this case went through pretrial conferences in February of 1964

---

[2] GCR 1963, 301.7. "Time Limit for Discovery. No discovery proceedings shall be conducted after completion of the pretrial conference provided by this rule or after waiver of pretrial in accordance with subrule 301.8 unless subsequently ordered by the court on written motion for good cause shown; provided, however, that physical examination of a party before trial may be ordered in the pretrial conference summary statement or in the order approving waiver of pretrial."

and again in 1965.[3]  Nonetheless, the principle that a judge is responsible for moving his docket is not a new one, and discretion was always lodged in trial judges to deny discovery when that process interfered with expeditious disposition of civil litigation.[4]

Second, there was no showing made before the trial judge as to any special need for discovery deposition to be taken for plaintiff's experts.  An expert is not a person "having knowledge of relevant facts" within the meaning of GCR 1963, 302.2.[5] Neither is an expert a person whose opinion testimony can be secured by means of a subpoena under GCR 1963, 305.[6]  By definition, an expert is one who gives opinion testimony, and not testimony concerning "relevant facts."[7]  He has a property right in his opinion and cannot be made to divulge it in answer to a subpoena.

We do not decide whether in a proper case the testimony of an expert may not be compelled in a

[3] Subrule 301.7 was added by amendment of July 19, 1966, to become effective January 1, 1967.

[4] Significantly, former subrule 301.1(8), in effect at the time the pretrial conferences in the instant case were held, required the court to make arrangements for completion of discovery proceedings at the pretrial conference.  The motions for discovery under consideration here were made some two years after the second pretrial conference had been held.

[5] GCR 1963, 302.2, provides in pertinent part: "(1) Persons taking depositions unless for good cause otherwise shown as provided by subrules 306.2 and 306.4, shall be permitted to examine the deponent regarding any matter not privileged which is admissible under the rules of evidence governing trials and relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of relevant facts."

[6] GCR 1963, 305.1, permits issuance of a subpoena to produce evidence "*  *  * related to any of the matters within the scope of the examination permitted by subrule 302.2, *  *  * ."

[7] We have noted that expert opinion testimony is an exception carved out of the general rule which confines a witness to a relation of facts.  DeGroot v. Winter (1933), 261 Mich 660.

pretrial discovery order, under penalty of prohibiting use of his testimony at trial; all we say here is that, under the circumstances of this case, denial of the requested discovery, sought as a matter of right, was not an abuse of the trial court's discretion. Thus, any discussion of the work product privilege is not necessary to this decision.

The cause is reversed and remanded to circuit court with direction to schedule the case for trial within 30 days. Costs to plaintiff.

T. M. Kavanagh, Adams, and T. G. Kavanagh, JJ., concurred with T. E. Brennan, C. J.

Black, J. (*concurring*). I agree with the result reached by the Brethren but cannot accept their premise that a question of judicial discretion is involved. I hold instead that the plaintiff in both cases at bar is possessed of a substantively valuable right to keep inviolate the entire product of preparatory work done and to be done by her counsel, and that the defendants and their counsel, this "one court of justice" as well, are possessed of no license or privilege to pry or nose into that product.

The difference between one's substantive right and his right to invoke judicial discretion was marked precisely, with ample supporting authority, in recent *Moyses* v. *Spartan Asphalt Paving Company* (1970), 383 Mich 314, 325, 326:

"A substantive right is like the presence or absence of pregnancy. It exists or does not exist, and cannot be made to depend on any good or dismaying turn of judicial discretion. Hence one's right of appeal to judicial discretion differs from his substantive rights in that the former is simply the 'Power or privilege of the court to act unhampered by legal rule.'"

We are referred to no Michigan Rule of Court, and to no procedural statute which might be deemed effective under GCR 1963, 16, and to no decision of this Court, holding that a motion for discovery of an opponent lawyer's ever-provisional witness list, lay or expert, is a proper invocation of judicial discretion. No decision of this Court says that such motions are grantable as a matter of right. And the Gilmore record of our GCR indoctrination meetings of 1962 (as to which see *Moyses, supra,* at 323, 324) discloses no hint of intention of the drafters or doctrinary discussants, or of any then Justice of this Court, that any part of the new Rules would authorize—even in the name of judicial discretion—a motion as here for compulsive opening up of one's witness-swearing intentions.

When and if this Court decides to open up a lawyer's work product that way, doubtless it will do so by some constitutionally debated Rule of Court, the wording of which may easily make clear a judicial intention of reversing the policy which, for *Wilson* v. *Saginaw Circuit Judge* (1963), 370 Mich 404, 413, 414, was purposefully written:

"Discovery in the text of today's issue has become an uncertain variable of provincial discretion, differing according to views of judges among the Federal circuits and Federal districts, and differing undeniably in the respective circuits of our State. The reason, as I see it, is that no court of ultimate authority has as yet defined with precision the 'work product of the lawyer,' and has then declared the extent to which—if at all—the traditional privacy of that product may be invaded by discovery proceedings."

To that portion of the text we added, by footnote 2:

"Consider, as a related aside, the Topsy-grown practice by which disclosure of the identity of witnesses the lawyer and his client may or may not call to the stand is—by some judges—penalty-compelled at pretrial. This indeed, unless resisted, pries into the attorney's strategy as well as his 'mental impressions' and 'legal theories.'"

Apropos the instant demand for discovery of the identity of some expert this plaintiff's counsel may provisionally intend to call to the stand with vouch,[1] we went on to say in *Wilson* at 415, 416:

"By *People* v. *Pratt* [1903], 133 Mich 125 (67 LRA 923), followed in *Lindsay* v. *Lipson* [1962], 367 Mich 1, 5, this Court is committed to 'a somewhat liberal interpretation' of the common-law right of professional privilege when the necessary relationship exists. We said, in the *Pratt Case* at 129:

"'The privilege is not confined to communications made for the purpose of obtaining advice. It extends to "communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other."'

"*Pratt's* 'liberal' rule defies discovery of the lawyer's 'work product.'"

The defendant seekers of identity rely upon GCR 1963, 302.2 (1); in particular the phrase therein: "and the identity and location of persons having knowledge of relevant facts." Not until now has

---

[1] Such decisions can never be safely and finally made in advance of trial. They depend naturally upon developments during trial starting with the *voir dire* examination. They depend also on possible last minute decisions of consulted experts that they will *not testify* to any opinion or opinions entertained by them. All persons, "experts" included, really do have a personal right to retain their opinions, distinguished from knowledge of admissible facts, free from compulsive divulgation.

anyone claimed in this Court—under that Rule—that litigants may force a deposed party or counsel to divulge under penalty the identity of "persons" whom such counsel has interviewed or consulted for trial-preparational purposes. Both *People* v. *Pratt* and *Lindsay* v. *Lipson,* both *supra,* deny such claimed right. And this Court thus far, as *Wilson* plainly discloses, has shown no disposition to over-rule or modify that "somewhat liberal interpretation" of the common-law right of professional privilege when the necessary relationship exists.

Parenthetically, the searching and thoughtful text *of Kelley* v. *Richardson* (1888), 69 Mich 430, 436, 437 in cautious mind, I agree with the Brethren when they say (*ante* at p 282) that "An expert is not a person 'having knowledge of relevant facts' within the meaning of GCR 1963, 302.2." That alone should be enough for summary reversal of the order reviewed, without tiptoeing into and out of the great realm of judicial discretion.

The right way to test interpretive questions like this is simply to try them out. Let the defendants depose, under Rule 302 (which they haven't done), either the plaintiff or her counsel, and then commence what is said to be rightful interrogation. If the plaintiff is the first deponent, will she not refer the interrogator to her counsel, the subject after all being the "work product" they are assembling?[2] Then, if counsel are deposed, will not the interrogator be up against the common-law privilege?

---

[2] That is just what Mr. Klabunde did, while still alive and waiting for his unmercifully stalled case to come to trial. He answered "no knowledge" under oath to defendants' interrogatory No. 3:

"State the name and address of every member of the medical profession that you have consulted or had conferences with, or your attorneys have had conferences with or consulted with as proposed expert witnesses to testify on your behalf as to the alleged negligence or malpractice of Defendants."

The fact is that a conscientious preparationist for legal war is not apt—the privilege considered—to disclose to his opponent or opponents any of his work-produced intentions, purposes, or plans, and no law compels him so to do. His intentions are bound to change from left to right or straight ahead, or to some other strategic variable, depending upon developments up to the eve of and during the course of trial. To make it plain, *his intentions* are *his business.*

To summarize both an appeal and a pair of tragically mired lawsuits:

1. Thus far we have not sanctioned *any* violation of the privacy of *any* part of *any* work product trial lawyers construct for their clients. That product is a concomitant of the relationship of attorney and client, and of the privilege arising therefrom. It is a really *broad* privilege, one we have maintained for the 67 years since *Pratt, supra,* was decided. The effort here is to invade what is a substantive right. I hold that there is no discretionary power to open it up for anyone, no matter what showing of "cause" the invoker of judicial discretion may exhibit or proffer.

2. The first of these cases was commenced by Mr. Klabunde in March of 1962 by what, to that time and as far back as this Court's beginning session of 1843, was known as a *declaration.* In the next year, however, stirring hosannas having heralded the General Court Rules of 1963,[3] Mr. Klabunde's

---

[3] Here are the final notes of the trumpet (copied with reference to source from *Husted* v. *Consumers Power Company* [1965], 376 Mich at 60):

"As these new laws of procedure become more fully understood and utilized, they will earn recognition as the greatest achievement of our generation in advancing the cause of the improvement in administration of justice in this State."

To and including 1962 the courts of Michigan got along both expeditiously and certainly under no more than 78 rules of Court. Now we have more than 900 of "these new laws of procedure," the

declaration became a *complaint*. Then, as veteran lawyers now are wont to say, GCR procrastination set in.

It is regrettable, in retrospect, that the trial judge in early 1963 did not for Mr. Klabunde employ the judicial prerogative of then new (GCR) Rule 14. Rule 14 permitted the judge to apply "the former procedure" upon finding that the new procedure "would work injustice." The new procedure in this instance has done just that with a vengeance, our order of November 30, 1970 considered. That order directed *immediate* trial of these consolidated Klabunde cases, but it cannot help the permanently paralyzed (until 1965 death) Mr. Klabunde. He was defeated totally by unrealistic new Rules of Court and the built-in cunctation they have fostered since 1962, and thereby was denied the privilege of testifying before a jury to that which he knew about the facts and results of his 1960 surgery.

I join the other Justices in reversal and remand for reinstatement of the order entered by Judge Hughes.

Dethmers, J., concurred with Black, J.

Kelly, J., did not sit in this case.

---

interpretation and application of which is bound to vex lawyers and judges, and time-delayed and expense-dismayed litigants, for many more than the already elapsed 8 years.