**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED July 12, 2005**

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD

    Plaintiffs-Appellees,
    and Cross-Appellants

v                                    No. 124994

JOSEPH R. CUSTER, M.D.,

    Defendant-Appellant,
    and Cross-Appellee

and

MICHAEL K. LIPSCOMB, M.D.,
MICHELLE M. NYPAVER, M.D., and
MONA M. RISKALLA, M.D.,

    Defendants.

_____

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD,

    Plaintiffs-Appellees
    and Cross-Appellants,

v                                      No. 124995

UNIVERSITY OF MICHIGAN MEDICAL
CENTER,

    Defendant-Appellant
    and Cross-Appellee.

_____

**BEFORE THE ENTIRE BENCH**

**MARKMAN, J.**

The question presented to this Court is whether expert testimony is necessary in the circumstances of this case. We conclude that it is.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs' fifteen-day-old son was admitted to the Pediatric Intensive Care Unit (PICU) at the University of Michigan Hospital, where he was treated for a respiratory problem. During his stay in the PICU, he was under the care of Dr. Joseph R. Custer, the Director of Pediatric Critical Care Medicine. When the infant was moved to the general hospital ward, physicians in that ward discovered that both of the infant's legs were fractured. Plaintiffs sued Dr. Custer and the hospital, alleging that the fractures were the result of negligent medical procedures, namely, the improper placement of an arterial line in the femoral vein of the infant's right leg and the improper placement of a venous catheter in the infant's left leg.

Defendant physician is board-certified in pediatrics and has certificates of special qualifications in pediatric critical care medicine and neonatal-perinatal medicine. Plaintiffs' proposed expert witness, who signed plaintiffs'

affidavit of merit, is board-certified in pediatrics, but does not have any certificates of special qualifications.

Before discovery, the trial court denied defendants' motion for summary disposition, concluding that plaintiffs' attorney had a "reasonable belief" under MCL 600.2912d(1) that plaintiffs' proposed expert witness was qualified under MCL 600.2169 to testify against the defendant physician, and, thus, that plaintiffs' affidavit of merit was sufficient. After discovery, the trial court granted defendants' motion to strike plaintiffs' expert witness on the basis that he was not actually qualified under MCL 600.2169 to testify against the defendant physician. The trial court dismissed plaintiffs' claim with prejudice, concluding that plaintiffs could not reach a jury without expert testimony.

The Court of Appeals affirmed the trial court's ruling that plaintiffs' proposed expert witness was not qualified under MCL 600.2169 to testify against the defendant physician (Judge Borrello dissented on this issue), but reversed the trial court's dismissal on the basis that expert testimony was unnecessary under the doctrine of res ipsa loquitur, i.e., an inference of negligence may be drawn from the fact that the infant was admitted to the PICU with healthy legs and discharged from the PICU with fractured legs (Judge Talbot dissented on this issue).

3

Unpublished opinion per curiam, issued October 21, 2003 (Docket Nos. 239868-239869). The case was remanded for trial.

Defendants sought leave to appeal the Court of Appeals decision that res ipsa loquitur applies and that expert testimony was not necessary. Plaintiffs sought leave to cross-appeal the Court of Appeals decision that their proposed expert witness was not qualified under MCL 600.2169 to testify against the defendant physician. We heard oral argument on whether to grant the applications or take other peremptory action permitted by MCR 7.302(G)(1). 471 Mich 890. We have granted plaintiffs' application for leave to appeal as cross-appellants.[1] In this opinion, we address only defendants' application for leave to appeal.

---

[1] That order states:

On December 9, 2004, the Court heard oral argument on defendants' application for leave to appeal the October 21, 2003, judgment of the Court of Appeals and plaintiffs' cross-application for leave to appeal. Plaintiffs' cross-application for leave to appeal is again considered and it is GRANTED. The parties are directed to include among the issues to be briefed: (1) what are the appropriate definitions of the terms "specialty" and "board certified" as used in MCL 600.2169(1)(a); (2) whether either "specialty" or "board certified" includes subspecialties or certificates of special qualifications; (3) whether MCL 600.2169(1)(b) requires an expert witness to practice or teach the same subspecialty as the defendant; (4) whether MCL 600.2169 requires an expert witness

(continued…)

4

## II. Standard of Review

This Court reviews de novo decisions on summary disposition motions. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004).

## III. Analysis

Plaintiffs argue that expert testimony is unnecessary in this case because of the doctrine of res ipsa loquitur. In a medical malpractice case, the plaintiff must establish:

> (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. [*Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994).]

---

(…continued)

> to match all specialties, subspecialties, and certificates of special qualifications that a defendant may possess, or whether the expert witness need only match those that are relevant to the alleged act of malpractice. See *Tate v Detroit Receiving Hosp*, 249 Mich App 212 (2002); and (5) what are the relevant specialties, subspecialties, and certificates of special qualifications in this case.

> The American Osteopathic Association's Bureau of Osteopathic Specialists, the Accreditation Council for Graduate Medical Education, and the Council of Medical Specialty Societies are invited to file briefs amicus curiae. Other persons or groups interested in the determination of the questions presented in this case may move the Court for permission to file briefs amicus curiae. [473 Mich ___ (2005).]

5

See MCL 600.2912a. Generally, expert testimony is required in medical malpractice cases. *Locke, supra* at 230.

> This Court has long recognized the importance of expert testimony in establishing a medical malpractice claim, and the need to educate the jury and the court regarding matters not within their common purview. . . . While we have recognized exceptions to this requirement, the benefit of expert testimony, particularly in demonstrating the applicable standard of care, cannot be overstated. [*Id*. at 223-224.]

However, if a medical malpractice case satisfies the requirements of the doctrine of res ipsa loquitur, then such case may proceed to the jury without expert testimony. *Id*. at 230. Res ipsa loquitur is a Latin term meaning, "[t]he thing speaks for itself." Black's Law Dictionary (6th ed).[2]

> [R]es ipsa loquitur . . . entitles a plaintiff to a permissible inference of negligence from circumstantial evidence.
>
> The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act. . . .
>
> In a proper res ipsa loquitur medical case, a jury is permitted to infer negligence from a result which they conclude would not have been reached unless someone was negligent. [*Jones v*

---

[2] "Res ipsa loquitur" is the "[r]ebuttable presumption or inference that defendant was negligent, which arises upon proof that the instrumentality causing injury was in defendant's exclusive control, and that the accident was one which ordinarily does not happen in absence of negligence." *Id*.

> *Porretta*, 428 Mich 132, 150, 155-156; 405 NW2d 863 (1987).]

In order to avail themselves of the doctrine of res ipsa loquitur, plaintiffs must meet the following conditions:

> "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff"; and
>
> (4) "[e]vidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff." [*Id.* at 150-151 (citations omitted).]

With regard to the first condition, this Court has held that "the fact that the injury complained of does not ordinarily occur in the absence of negligence must either be supported by expert testimony or must be within the common understanding of the jury." *Locke, supra* at 231. In this case, whether a leg may be fractured in the absence of negligence when placing an arterial line or a venous catheter in a newborn's leg is not within the common understanding of the jury, and, thus, expert testimony is required. That is, plaintiffs needed to produce expert testimony to support their theory that the infant's injuries were not the unfortunate complication of a

7

reasonably performed medical procedure. As this Court explained in *Jones, supra* at 154:

> [I]n a normal professional negligence case, a bad result, of itself, is not evidence of negligence sufficient to raise an issue for the jury. . . . Something more is required, be it the common knowledge that the injury does not ordinarily occur without negligence or expert testimony to that effect.
>
> In a case where there is no expert evidence that "but for" negligence this result does not ordinarily occur, and in which the judge finds that such a determination could not be made by the jury as a matter of common understanding, a prima facie case has not been made, and a directed verdict is appropriate.

Whether, "but for" negligence, the newborn's legs would not have been fractured is not a determination that can be made by the jury as a matter of common understanding. As the trial court explained:

> Whether the fractures could have occurred in the absence of someone's negligence is an allegation that must be supported by expert testimony; the procedures [the infant] underwent are not within the common knowledge of a reasonably prudent jury. Furthermore, whether fractures of the kinds suffered by [the infant] are possible complications arising from the types of procedures performed during [his] stay at the Pediatric ICU is knowledge that is exclusively within the expertise of the medical profession.

And, as Judge Talbot in dissent in the Court of Appeals explained, "[a]ssuming that the fractures may have been caused by the placement of the lines in the infant's legs, the risks associated with the placement of arterial lines or venous catheters in a newborn infant, and whether

8

fractures ordinarily do not occur in the absence of negligence, are not within common knowledge of a reasonably prudent fact finder." Slip op at 9. Because we do not know whether the injury complained of does not ordinarily occur in the absence of negligence, we cannot properly apply the doctrine of res ipsa loquitur.

Plaintiffs argue that, even if res ipsa loquitur does not apply, expert testimony is not required because the alleged negligence was within the common understanding of the jury. For the same reason that we conclude that res ipsa loquitur does not apply here—whether a leg may be fractured in the absence of negligence when placing an arterial line or a venous catheter in a newborn's leg is not within the common understanding of the jury—we conclude that this latter exception to the requirement of expert testimony also does not apply.[3]

---

[3] Our dissenting colleagues criticize us for deciding defendants' application for leave to appeal separately from plaintiffs' cross-application for leave to appeal. However, it is only logical to determine whether expert testimony is required, the issue raised in defendants' application for leave to appeal, *before* determining whether plaintiffs' proposed expert is qualified to testify, the issue raised in plaintiffs' cross-application for leave to appeal. If we were to determine that expert testimony was *not* required, there would be no need to determine whether plaintiffs' expert is qualified to testify. Because we have determined in this opinion that expert testimony *is* required, we must next determine whether plaintiffs' proposed expert is qualified to testify. Because of the complexities and the importance of the latter issue, we
(continued…)

9

IV. CONCLUSION

Expert testimony is required because whether a leg may be fractured in the absence of negligence when placing an arterial line or a venous catheter in a newborn's leg is not within the common understanding of a jury. We have granted plaintiffs' application for leave to appeal as cross-appellants, and will determine whether plaintiffs' expert is qualified, within the meaning of MCL 600.2169, to testify against the defendant physician. Accordingly, while we now hold that this case cannot proceed to a jury on a res ipsa loquitur theory, the entry of final judgment in this case must await our determination of the expert-qualification issue.[4]

> Stephen J. Markman
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.

---

(…continued)
have granted plaintiffs' cross-application for leave to appeal. However, because we have already reached a decision on the former issue, and because we believe that the Court of Appeals erred in its analysis of the res ipsa loquitur doctrine, we issue our opinion on this former issue today.

[4] Justice Cavanagh concludes that "the trial court abused its discretion in not granting plaintiffs' motion for an extension of time to add a new expert witness." *Post* at 2. Because plaintiffs have not appealed the trial court's decision denying plaintiffs' motion for an extension of time to add a new expert witness, we do not address this issue.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD,

     Plaintiffs-Appellees
     and Cross-Appellants,

v                              No. 124994

JOSEPH R. CUSTER, M.D.,

     Defendant-Appellant
     and Cross-Appellee,

and

MICHAEL K. LIPSCOMB, M.D.,
MICHELLE M. NYPAVER, M.D., and
MONA M. RISKALLA, M.D.,

     Defendants.

_____

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD,

     Plaintiffs-Appellees
     and Cross-Appellants,

v                              No. 124995

UNIVERSITY OF MICHIGAN MEDICAL
CENTER,

     Defendant-Appellant
     and Cross-Appellee.

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur with the majority's conclusion that expert witness testimony is necessary in this case because I agree

that the medical procedures at issue are not within the common understanding of a jury. I also concur with Justice Weaver that defendant's[1] appeal and plaintiffs' cross-appeal should not be bifurcated, but should be considered and decided together. Like Justice Weaver, I would have granted defendant's application rather than peremptorily reversing the Court of Appeals. I write separately because I find that although expert testimony is required in this case, the trial court abused its discretion in not granting plaintiffs' motion for an extension of time to add a new expert witness.

As noted by the Court of Appeals, some of the procedural aspects of this case are not definitively clear on the existing record, which may lead one to question which of the parties' multiple motions were the impetus for the trial court's ultimate dismissal of plaintiffs' claims. After discovery, defendants University of Michigan Medical Center and Dr. Custer moved to strike plaintiffs' expert witness as unqualified. They also moved for summary disposition under MCR 2.116(C)(10) on *other* bases, including allegations that a claim for respondeat superior did not lie and that plaintiffs' testimony did not support a claim for negligent infliction of emotional distress. In

---

[1] The singular "defendant" refers to Joseph R. Custer, M.D.

2

response to defendants' claim that plaintiffs' expert was not qualified, plaintiffs alleged that they did not need an expert witness at all because the matters to be decided were within the common understanding of a jury.

At the hearing on these motions, the trial court granted defendants' motion to strike plaintiffs' expert, but did not address whether expert testimony was required. Defendants then moved to enter an order of dismissal, presumably because they assumed that an expert was required. Plaintiffs objected to the order, requested a determination whether expert testimony was needed, and moved to "extend time" to add an expert witness. The trial court determined that expert testimony was necessary, denied the motion to add an expert, and, as a result, entered an order dismissing plaintiffs' claims with prejudice.

While plaintiffs' appellate challenges to the trial court's dismissal have focused primarily on plaintiffs' claim that their expert was qualified or, in the alternative, that expert testimony was not required, the trial court's order denying plaintiffs' motion to add an expert was inextricably intertwined with its decision to dismiss the case. In other words, the trial court's denial of plaintiffs' motion to add an expert and its grant of defendants' motion to strike plaintiffs' expert were

3

equally dispositive of plaintiffs' claims.  Thus, by virtue of opposing defendants' application for leave to appeal and mounting their own challenges to the trial court's dismissal, plaintiffs are necessarily, albeit somewhat indirectly, challenging the trial court's denial of their motion to add an expert.  Contrary to the majority's position, *ante* at 11 n 4, I believe that the ruling on the motion to add an expert is fairly encompassed in the issues this Court is addressing.

Thus, having found that plaintiffs needed expert witness testimony, I would then find that the trial court abused its discretion by denying plaintiffs' motion for an extension of time to add an expert witness and dismissing the case with prejudice.  A trial court's decision whether to allow a plaintiff to add an expert witness is reviewed for abuse of discretion, as is a trial court's ruling on adjournment.  See *Klabunde v Stanley*, 384 Mich 276, 281; 181 NW2d 918 (1970); *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992).  MCR 2.401(I)(2) states that if a party fails to list a witness by the time designated by the trial court, "[t]he court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown."  Thus, in considering a motion to amend a witness list, the trial court should determine whether the party seeking the

4

amendment demonstrated good cause. Similarly, considerations for a motion to adjourn or extend time include whether the requesting party has sought numerous past continuances, whether the party has exercised due diligence, and the "lack of any injustice to the movant." *Tisbury*, *supra* at 20.

Another important consideration, though, is our legal system's preference for disposition of litigation on the merits. See *Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 573, 581; 321 NW2d 653 (1982). Thus, if denying a motion to extend time to add an expert witness extinguishes a plaintiff's cause of action, that factor should be given due weight. See *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). A trial court should recognize that it has other, less drastic, measures available to it by which to ameliorate any inconvenience caused to the opposing party. *Id.* For example, the trial court could require the plaintiff to pay any deposition or other costs, including attorney fees, associated with the delay caused by the plaintiff's failure to timely name the witness. In addition, the trial court should have carefully weighed the available options and expressed reasons why dismissal with prejudice was preferable over other alternatives. *Id.* at 32-33.

In this case, plaintiffs moved for an extension of time to add an expert witness directly after the trial court struck the expert witness that plaintiffs timely presented.  The controversy surrounding plaintiffs' named expert pertained to problematic language in MCL 600.2169, language that this Court had not then, and has not yet, fully construed.  In fact, whether plaintiffs' original expert witness was qualified to testify in this case is the subject of plaintiffs' yet to be decided cross-appeal.  A look at this Court's order granting plaintiffs' cross-application for leave to appeal, 473 Mich ___ (2005), which contains a list of unanswered questions regarding what qualifications an expert witness in a medical malpractice case must have, is illustrative of the unsettled nature and complexity of MCL 600.2169.

Clearly, then, there are apparent difficulties in interpreting exactly what qualifications are required of a medical malpractice expert witness.  Where this Court has not agreed on the proper construction of the statute,[2] and has expressly left for another day several of the precise questions at the core of the qualifications debate in this

---

[2] See, e.g., *Halloran v Bhan*, 470 Mich 572; 683 NW2d 129 (2004), and *Grossman v Brown*, 470 Mich 593; 685 NW2d 198 (2004).

6

case,[3] a plaintiff who has made a good-faith effort to satisfy unconstrued statutory criteria should not be penalized for ostensibly failing to meet the criteria with the ultimate sanction of dismissal with prejudice.[4] Rather, I would hold that where the trial court determined that the requirements of MCL 600.2169 had not been met, it should also have found that plaintiffs demonstrated good cause to seek additional time to add a new expert. Further, the court should have found that disposition on the merits outweighed any prejudice a short delay might have caused defendants. And as noted, the trial court could still have maintained sufficient control over its docket by, for example, setting a deadline by which plaintiffs had to present their new expert and invoking other measures to mitigate any harm to defendants.

On that basis alone, I would hold that the trial court, having found that plaintiffs' expert did not meet the criteria contained in the statute, should have granted

---

[3] *Halloran*, *supra* at 577 n 5; *Grossman*, *supra* at 600 n 7.

[4] I make no conclusions regarding whether plaintiffs' expert was indeed qualified for trial purposes. Because a majority of this Court insists on deciding this portion of the case today and the expert witness portion of the case at a later date, I will assume for purposes of this opinion that plaintiffs at least had a good-faith belief that their expert complied with the statutory mandates. This admittedly awkward position is the direct result of the majority's refusal to address these interconnected issues at the same time.

7

plaintiffs additional time to procure another expert instead of dismissing plaintiffs' claim with prejudice and permanently depriving plaintiffs of a cause of action. Because trial was still two months away, any delay would have been minimal and containable. Plaintiffs had sought no previous continuances, and their request was not the result of a lack of due diligence.[5]

For these reasons, I dissent from the majority opinion granting peremptory reversal to defendant.

Michael F. Cavanagh
Marilyn Kelly

---

[5] To the extent defendant argues that plaintiffs were on notice that defendant would challenge their expert's qualifications, I find the argument without merit. It is not unusual for a defendant in a medical malpractice suit to launch a challenge of that type. And on defendants' first challenge to the expert, which occurred directly after plaintiffs filed their complaint and affidavit of merit, the trial court found that the expert met the threshold requirements for purposes of the affidavit of merit. The mere fact that the trial court reserved for a later date the question whether the expert could offer trial testimony does not, in my view, compel a finding that plaintiffs should have automatically sought a replacement expert at that juncture, as defendant implies.

# STATE OF MICHIGAN

## SUPREME COURT

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD,

     Plaintiffs-Appellees
     and Cross-Appellants,

v                                  No. 124994

JOSEPH R. CUSTER, M.D.,

     Defendant-Appellant
     and Cross-Appellee,

and

MICHAEL K. LIPSCOMB, M.D.,
MICHELLE M. NYPAVER, M.D., and
MONA M. RISKALLA, M.D.,

     Defendants.

_____

JOHANNA WOODARD, Individually and as
Next Friend of AUSTIN D. WOODARD,
a Minor, and STEVEN WOODARD,

     Plaintiffs-Appellees
     and Cross-Appellants,

v                                  No. 124995

UNIVERSITY OF MICHIGAN MEDICAL
CENTER,

     Defendant-Appellant
     and Cross-Appellee.

_____

WEAVER, J. (*dissenting*).

While I would likely agree with the majority conclusion that expert testimony is necessary in the circumstances of this case, I dissent from the majority decision, because I would not decide defendants' application for leave to appeal separately from plaintiffs' cross-application for leave to appeal and without full briefing and argument.  Plaintiffs' cross-application was granted at 473 Mich ___ (2005).

Elizabeth A. Weaver