*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN DOERING,

        Plaintiff/Counterdefendant-
        Appellant,

v

PATRICK KOPPELBERGER,

        Defendant/Cross-Defendant,

and

ROSEMARY MARCIL,

        Defendant,

and

HOME OWNERS INSURANCE COMPANY,

        Defendant/Cross-Defendant-
        Appellee,

and

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

        Counterplaintiff/Cross-
        Plaintiff/Intervening Defendant.

UNPUBLISHED
September 26, 2019

No. 343196
Macomb Circuit Court
LC No. 2016-000423-NI

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

-1-

In this case arising out of an automobile accident, plaintiff Steven Doering appeals as of right the trial court's judgment in favor of defendant Home Owners Insurance Company (Home Owners), which reflected the jury's no-cause verdict after a week-long trial regarding no-fault first party benefits and an uninsured motorist claim. On appeal, plaintiff challenges a previous order quashing plaintiff's subpoena for the de benne esse deposition of Mary K. Kneiser, M.D. Finding no reversible error, we affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

Plaintiff was involved in a rear-end car accident on I-75 on August 14, 2015. At the time of the accident, he was purportedly in the course of his employment with RGIS. As a result, plaintiff filed two lawsuits: this one seeking no-fault benefits, and a second one seeking workers' compensation benefits. In this lawsuit, plaintiff sued the driver of the vehicle that hit him, Patrick Koppelberger, the owner of that vehicle, Rosemary Marcil, and plaintiff's own automobile insurer, Home Owners. The only relevant defendant for purposes of this appeal is Home Owners.[1]

Plaintiff sought personal protection insurance (PIP) benefits and uninsured-motorist benefits for injuries he allegedly sustained in the accident. Because of the related workers' compensation case and coordination of workers' compensation and no-fault benefits, it was undisputed at trial that plaintiff was essentially limited to seeking alleged damages in the form of lost income from his self-employment[2] and a serious impairment of a body function. To recover, plaintiff was required to prove, among other things, that he did, in fact, sustain a bodily injury. In an attempt to meet that burden, plaintiff issued a subpoena for the de bene esse deposition of Mary K. Kneiser, M.D., the independent medical examiner (IME) retained by the workers' compensation insurer in the related workers' compensation case. Plaintiff believed Dr. Kneiser's testimony would be favorable because her IME report included a statement that "[h]e had a cervical strain in the motor vehicle accident based on the accuracy of his history" and a statement that "[h]is EMG testing is suggestive of a lower truck brachial plexopathy" that "may also be

---

[1] Plaintiff did not contest Marcil's assertion that she could not be held liable under the owner's-liability statute, MCL 257.401, because Koppelberger did not have permission to drive the car. The trial court entered an order dismissing plaintiff's claim against Marcil accordingly. Subsequently, the court granted summary disposition to Marcil's insurer, intervening defendant Frankenmuth Mutual Insurance Company (Frankenmuth), on a counterclaim Frankenmuth filed against plaintiff and a cross-claim it filed against Home Owners. Summary disposition was based on the fact that the Frankenmuth policy only provided coverage when an individual was operating an insured vehicle with a "reasonable belief" that he had the right to use the vehicle. Plaintiff did not contest that defendant did not have permission to use the vehicle. Frankenmuth was absolved of its obligation to defend and indemnify Koppelberger. Frankenmuth also successfully moved for entry of a default judgment on its cross-claim against Koppelberger. This left plaintiff's claims against Koppelberger and Home Owners.

[2] Plaintiff claimed self-employment with "Doering Design Service" and "Doering Manufacturing, LLC."

work accident related." According to plaintiff, her testimony could have undermined testimony by Home Owners' witnesses or arguments by its attorneys that plaintiff was not injured and that his medical treatment following the accident was "lawyer-driven."

After she was subpoenaed, Dr. Kneiser retained counsel and objected to the subpoena, arguing that an expert may not be compelled to provide involuntary testimony pursuant to a subpoena. The trial court agreed. In doing so, the trial court emphasized that a nonparty paid Dr. Kneiser pursuant to a contractual agreement, and that plaintiff had no proprietary rights in Dr. Kneiser's findings or opinions. Accordingly, the trial court quashed the subpoena, and the case proceeded to trial. Ultimately, the jury returned a no-cause verdict, finding that plaintiff was not injured in the August 14, 2015 accident.

## II. ANALYSIS

Plaintiff argues that the trial court erred in quashing the subpoena for Dr. Kneiser's testimony. We agree. This Court "reviews a trial court's decision to quash a subpoena for an abuse of discretion. A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. A trial court's findings of fact, however, are reviewed for clear error." *Fette v Peters Constr Co*, 310 Mich App 535, 547; 871 NW2d 877 (2015) (citations omitted).

Dr. Kneiser argued in her motion to quash that she was an unwilling expert witness and that unwilling expert witnesses could not be compelled to testify pursuant to a subpoena. In support of her argument, she relied on *Klabunde v Stanley*, 384 Mich 276; 181 NW2d 918 (1970),[3] in which our Supreme Court affirmed a trial court's decision to deny a defendant's pretrial motion to depose the plaintiff's expert witnesses. The Court relied in part on the fact that the defendant sought to depose the expert witnesses too late, but also reasoned, "[T]here was no showing made before the trial judge as to any special need for discovery to be taken for plaintiff's experts." *Id*. at 282. In support of this second reason, the Supreme Court elaborated as follows:

> An expert is not a person 'having knowledge of relevant facts' . . . . Neither is an expert a person whose opinion can be secured by means of a subpoena . . . . By definition, an expert is one who gives opinion testimony, and not testimony concerning 'relevant facts.' He has a property right in his opinion and cannot be made to divulge it in answer to a subpoena. *Id*.

Dr. Kneiser observed that an unrelated party paid her pursuant to a contractual agreement to examine plaintiff for reasons unrelated to the instant litigation. She further observed, "This is

---

[3] Dr. Kneiser also relied on *Lozano v Detroit Med Ctr*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2008 (Docket No. 279087). In *Lozano*, this Court found it "well settled that an expert witness may not be compelled to provide involuntary testimony pursuant to a subpoena" based on the Supreme Court's decision in *Klabunde*. Unpublished opinions are not binding precedent. MCR 7.215(C)(1).

not a situation in which Plaintiff has paid any consideration, independently or through an insurer for Dr. Kneiser's services, and therefore Plaintiff has no proprietary rights in Dr. Kneiser's opinions or findings." The trial court adopted and echoed Dr. Kneiser's reasoning as the basis for granting her motion to quash.

It is a longstanding principle that expert witnesses have a property interest in their opinions and cannot be compelled to testify. See *Webb v Page*, 1 Car & K 23 (1843) (stating that expert witnesses have a right to demand compensation for their lost time from the parties calling them to testify); *United States v Howe*, 26 F Cas 394 (WD Ark, 1881) ("a physician cannot lawfully be compelled to testify as an expert to matters of medical science against his objection, unless first compensated by a reasonable fee, as for a professional opinion[.]"); *Pennsylvania Co for Insurances on Lives & Granting Annuities v City of Philadelphia*, 262 Pa 439, 441-442; 105 A 630 (1918) ("[t]the private litigant has no more right to compel a citizen to give up the product of his brain than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained.").[4] Normally, experts testifying solely as experts do not have "knowledge of relevant facts" within the meaning of MCR 2.302(B)(1). *Klabunde*, 384 Mich at 282. Such was the case in *Klabunde*, where the defendant asked to depose the expert medical witnesses upon whom the plaintiff was relying to establish the elements of her medical malpractice claim, but who were uninvolved in the medical treatment upon which the plaintiff based the claim.[5] *Id*. at 280. Sometimes, however, witnesses called as experts are not called solely as experts, but do have first-hand knowledge of facts relevant to the litigation; such is the case here.

---

[4] This principle notwithstanding, courts may compel an unwilling expert to testify in unusual circumstances, such as where the expert has unique factual knowledge essential to the fair determination of a dispute. See, e.g., *Wright v Jeep Corp*, 547 F Supp 871 (ED Mich, 1982) (compelling testimony from an eminent crash researcher with material relevant to the dispute, but also holding that he was entitled to a reasonable fee for his testimony and could only be deposed in the county of his residence).

[5] *Klabunde* noted that its ruling affirming the trial court's denial of defendant's motion to depose plaintiff's expert witnesses was limited to whether the trial court abused its discretion under the presenting circumstances, and it pointed out that "[w]e do not decide whether in a proper case the testimony of an expert may not be compelled in a pretrial discovery order, under penalty of prohibiting use of his testimony at trial. . . ." *Id*. at 282-283. Today, pursuant to MCR 2.302(B)(4)(a)(ii), a party may take the deposition of a person whom the other party expects to call as an expert witness at trial. Pursuant to MCR 2.302(B)(4)(b), "[a] party may not discover the identity of and facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial except" under certain circumstances, including when the expert physically examined the requesting party, as set forth in MCR 2.311.

-4-

According to the report she submitted to MES Solutions,[6] on February 23, 2016, Dr. Kneiser examined plaintiff "for Independent Medical Evaluation of injuries sustained at work on August 14, 2015 and October 1, 2015."[7] Upon examining plaintiff, Dr. Kneiser "became a witness to the nature and extent of [plaintiff's] injuries." *Kissel v Nelson Packing Co*, 87 Mich App 1, 4; 273 NW2d 102 (1978) (holding that the physician who conducted an IME in a premises liability case "became a witness to the nature and extent of his injuries"). Based on first-hand knowledge obtained from her examination of plaintiff, Dr. Kneiser could describe plaintiff's physical condition and the expert opinions she derived therefrom. See *id*. (explaining that, having first-hand knowledge, the IME physician could "describe what he had seen and give expert inferences therefrom). Dr. Kneiser did not examine plaintiff for purposes of the instant litigation, nor did the parties to the present litigation retain or consult her. Nevertheless, her first-hand knowledge of plaintiff's condition on the date of her examination was related to this litigation in that it pertained to whether he suffered accidental bodily injuries in a car accident on August 14, 2015, and for which he sought PIP and uninsured motorist benefits. Thus, Dr. Kneiser's factual observations and her opinions drawn therefrom were "relevant to the subject matter involved in the pending action." MCR 2.302(B)(1). Accordingly, the trial court erred in granting her motion to quash the subpoena and in issuing an order that prevented plaintiff from taking her de bene esse deposition.[8]

Notwithstanding the trial court's error, we do not believe it necessary to reverse the jury's verdict and remand this matter for a new trial. A trial court's error in a ruling or order admitting or excluding evidence is not grounds for setting aside a verdict or ordering a new trial "unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). Plaintiff asserts on appeal that had the jury heard testimony regarding Dr. Kneiser's medical evaluation, there is a reasonable probability that it would have reached a different result because her testimony would have bolstered the credibility of plaintiff's treating physicians by showing that she, too, observed plaintiff's bodily injury. Having reviewed Dr. Kneiser's medical report, we do not share plaintiff's optimism.

---

[6] MES Solutions is a company that provides IMEs, records reviews, and peer reviews for, among other things, workers' compensation claims.

[7] It is not entirely clear what workplace injury plaintiff suffered on October 1, 2015. Dr. Kneiser's report indicates that that is the date plaintiff first treated with Dr. Daniel Clark, and references the results of two MRI reports and the contents of a signed medical form, all from October 1, 2015.

[8] Plaintiff contends that MCL 418.385 entitles him to depose Dr. Kneiser in this case. It does not. Nothing in the language of this workers' compensation statute suggests that it could compel a deposition in a case that does not involve a worker's compensation claim. Plaintiff was entitled to depose Dr. Kneiser, but not under the authority of MCL 418.385, and only with regard to her first-hand knowledge of her examination of him and her opinions based on that examination.

Dr. Kneiser recorded plaintiff's description of neck and back pain and limitations on his ability to bend and lift and of how hot showers and occasional doses of Advil helped ease the pain. She noted the diagnostic tests already ordered by his treating physicians and reviewed the records of two MRIs and numerous X-rays performed on October 1, 2015 and October 2, 2015. After physically examining plaintiff, Dr. Kneiser gave her overall impressions [9] as follows:

> He had a cervical strain in the motor vehicle accident based on the accuracy of his history. He has a postural strain along with signs and symptoms of thoracic outlet syndrome with pectoralis muscle tenderness and numbness in his right medial hand. His EMG testing is suggestive of a lower trunk brachial plexopathy. This may also be work accident related.
>
> He has a thoracic syrinx, which is not work accident related.
>
> He has evidence of multilevel facet arthrosis and to a lesser degree of degenerative disc disease. This is not work accident related.
>
> He has evidence of moderate right median mononeuropathy at the wrist and possible distal neuropathy. This is not work accident related.
>
> He has incidental finding of a small thoracic syrinx, which is asymptomatic.

She expressed an interest in viewing EMG studies already ordered by plaintiff's treating physicians[10], Dr. Clark and Dr. Fernando Diaz, and recommended a postural exercise program, as he "is not performing any active exercise at this point," and six to 12 physical therapy visits, followed by a functional capacity evaluation to provide an objective basis for any work restrictions. She stated that plaintiff could continue to work "with restrictions of no lifting greater than 10 pounds pending additional treatment[,]" and concluded that plaintiff "would not be expected to require permanent restrictions for any work accident related injury."

Plaintiff claims that the trial court denied him a fair trial by preventing him from presenting evidence that Dr. Kneiser observed his injury during her independent medical

---

[9] In order to predicate error on a ruling that excludes evidence, the error must affect a substantial right of the party and the party must make an offer of proof as to the substance of the evidence, unless the substance is clear from the questions asked at trial. MRE 103(a)(2). Defendant asserts that plaintiff did not make an offer of proof. We disagree. Plaintiff attached Dr. Kneiser's reports to his response to Dr. Kneiser's motion to quash, served the response on defendant as well as on Dr. Kneiser, and argued at the motion hearing that he expected Dr. Kneiser to testify in accordance with her reports. We find this a sufficient offer of proof.

[10] In a March 25, 2016 report issued after she reviewed the prior EMG testing, Dr. Kneiser noted that the EMG confirms the diagnosis of moderate right median mononeuropathy at the wrist and possible distal neuropathy. But she again noted that the condition was not work accident related, or in other words, did not arise from the August 14, 2015 car accident.

examination. However, with regard to injury, Dr. Kneiser's report shows only plaintiff's report of a cervical strain suffered during the work accident, a postural strain that neither plaintiff nor Dr. Kneiser specifically relate to the accident, and a potential but unconfirmed lower trunk brachial plexopathy that might be related to the work accident. Her impression of plaintiff's other conditions was that they were not related to his work accident. In other words, Dr. Kneiser's report contains no opinion that any of plaintiff's injuries probably arose out of the August 14, 2015 car accident. In light of her findings, Dr. Kneiser opined that plaintiff's reported pain could be addressed with postural exercises and a brief period of physical therapy, and plaintiff would not be expected to require permanent restrictions for any work accident related injury. From this, one might reasonably infer that if plaintiff did suffer a confirmed injury related to his work accident, it was neither serious nor permanent.

Plaintiff also contends that Dr. Kneiser's findings would bolster the credibility of his treating physician's testimony regarding his injuries. However, the stark contrast between Dr. Kneiser's impressions of potential injuries and modest recommendations and the testimony regarding plaintiff's treatment strongly suggests otherwise. Plaintiff testified that Dr. Clark had him report for 45-minute visits five days a week from October 2015 through March 2016. Dr. Clark acknowledged in his de bene esse deposition, which was read into the record at trial, that he charged plaintiff approximately $10,000 per month for his treatment, and that his office had charged $116,788 to plaintiff's workers' compensation insurance carrier. Despite acknowledging that plaintiff was reporting pain levels of 1, 2, and 3 out of 10, Dr. Clark opined that plaintiff might require treatments for the next 10 years. Dr. Kneiser's report of her examination of plaintiff serves not to bolster the credibility of other testimony about plaintiff's injuries, but to provide a contrast to the intensity of the medical treatment plaintiff began to receive once he engaged and followed the directions of his then-lawyer, and to appear to support Home Owner's thesis that plaintiff's treatment was "lawyer-driven."

In light of the foregoing, we find no error requiring reversal.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica